MARCO A. GONZALEZ (SBN 190832)
Email: marco@coastlaw.com
LIVIA BORAK BEAUDIN (SBN 259434)
Email: livia@coastlaw.com
NATALIE CLAGETT (SBN 351072)
Email: natalie@coastlaw.com
COAST LAW GROUP, LLP
1140 South Coast Highway 101
Encinitas, CA 92024
Phone: (760) 942-8505
Fax: (760) 942-8515

BENJAMIN HARRIS (SBN 313193)
Email: ben@lawaterkeeper.org
ERINA KWON (SBN 235079)
Email: erina@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association, | Case No.: 2:24-cv-06463-HDV(AJRx) |
| Plaintiff, | **[PROPOSED]** CONSENT DECREE |
| v. | |
| METAL RECYCLING SERVICES OF CALIFORNIA, LLC, a California limited liability company, | |
| Defendant. | |

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant Metal Recycling Services of California, LLC ("Defendant") owns and operates a facility at 155 East Redondo Beach Boulevard, Gardena, California 90248, under Waste Discharger Identification number 4 19I030272 ("Facility");

**WHEREAS,** the Facility's industrial activities consist of buying scrap copper and nonferrous metals and alloys; disposing of refrigerant and associated equipment; and offering free machine dismantling and hauling. The Facility is categorized under Standard Industrial Classification ("SIC") Code 5093, covering Scrap and Waste Materials;

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on May 24, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on July 31, 2024, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24-cv-06463 ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains

and surface waters, including the Dominguez Channel Estuary, Los Angeles/Long Beach Harbor, San Pedro Bay, and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (individually a "Party" and collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, since the filing of the Complaint, Defendant proposed installing the advanced treatment system set forth herein and Defendant anticipates spending at least an additional $60,000 to install such system, improve stormwater management at the Facility and implement this Consent Decree;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.      The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.      LA Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree

and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I.   OBJECTIVES

6.   It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.   In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.   AGENCY REVIEW AND DEFINITIONS

### A.   AGENCY REVIEW OF CONSENT DECREE

8.   <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with <u>40 C.F.R. § 135.5</u>. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised

by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by <u>40 C.F.R. § 135.5</u>, in order to coordinate the Court's calendar with the 45-day review period.

10.    <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.    "BAT" means the Best Available Technology Economically Achievable.

b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

[PROPOSED] CONSENT DECREE

  f. "Design Storm" means the volume and flow rate of runoff produced from <u>a design storm as defined by General Permit Section X.H.6.</u>

  g. "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

  h. "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

  i. "Entry Date" means the day this Consent Decree is approved and entered by the Court.

  j. "Forecasted Rain Event" means a forecasted rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90248, West Rancho Dominguez, CA, USA"[2].

  k. "MIP" means a Monitoring Implementation Plan.

  l. "PPT" means Pollution Prevention Team.

  m. "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

  n. "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

  o. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

  p. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

  q. "SWPPP" means a Storm Water Pollution Prevention Plan.

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=33.8935&lon=-118.274.

[PROPOSED] CONSENT DECREE

r.    "Term" means the period between the Effective Date and the "Termination Date."

s.    "Termination Date" means the latest of:

    i.    June 30 following two (2) years after the advanced treatment system is fully installed, operational, and optimized;

    ii.    seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the date in Paragraph 11.s.i; or

    iii.    seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

t.    "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.    <u>Current and Additional Best Management Practices.</u> At all times during the Term of this Agreement, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to comply with: (1) BAT/BCT-level pollutant reductions; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

14. <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

15. <u>Structural and Non-Structural BMPs for the Facility</u>. As soon as possible but no later than forty-five (45) days of the Effective Date, unless otherwise noted, Defendant shall develop and implement the following BMPs at the Facility:

    a.    Remove rust-colored pavement staining throughout the Facility. If power washing is performed, collect and dispose of all wash water properly as industrial wastewater;

    b.    Within 24 hours of a Forecasted Rain Event, place physical barriers to prevent storm water discharges from any point other than Discharge Point 1, including without limitation by placing sandbags to direct flow from the eastern part of the Facility's driveway towards the western part of the driveway where the sample is collected. Such barriers shall be deployed, at minimum, at the following locations prior to each predicted rain event until the storm water ceases flowing after the rain event has fully concluded;

    c.    Install concrete berms, curbs, sand or gravel bags, plugs, or similarly effective physical barriers that prevent storm water run-on from neighboring facilities from comingling with the Facility's storm water discharges, including without limitation, assessing the feasibility of, and if feasible, (1) plugging the holes in the stem

[PROPOSED] CONSENT DECREE

wall separating the Facility from the FedEx Facility next door or diverting run-on flows; and (2) curbing or placing sandbags to prevent run-on under the sheet metal fence from the adjacent facility to the east;

d.  Implement a sweeping program using the existing Sanitmax SM80 or other regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 µm) particles to remove particles on all paved areas at least twice daily, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access. Additionally, Defendant shall vacuum sweep the entire copper wire stripping area after each use;

e.  Replace all debris and scrap bins that do not have permanent lids with bins that do have permanent lids;

f.  Remove, and prevent the storage of, all unused, inutile, and/or abandoned racks, vehicles, equipment, paint and waste scrap materials from uncovered areas of the property;

g.  Institute an equipment and vehicle maintenance program that ensures:

   i.  no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

   ii.  maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

   iii.  when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and

[PROPOSED] CONSENT DECREE

clean up any discharge or spills of waste fluids to the
ground; and

h.   Within ninety (90) days of the Effective Date, Defendant shall
develop, install, and operate an advanced treatment system that
meets the design storm standards for treatment control BMPs
described in Section X.H.6. of the Industrial General Permit.
However, any failure or delay in the development, installation, or
operation of said advanced treatment system when and to the
extent such failure or delay is caused by or results from events or
acts beyond Defendant's control, including but not limited force
majeure events contained within Paragraph 57 herein, shall not be
deemed to be a violation nor breach of any part of this Consent
Decree.  Notwithstanding the above, notification of a missed
deadline shall be provided by Defendant pursuant to Paragraph 55
herein.

i.   Within seven (7) days of each of the above BMPs being
implemented, Defendant shall confirm to LA Waterkeeper in
writing, with photographs, that such BMP has been implemented
as set forth above, and with respect to the advanced treatment
system, such writing shall be certified by a QISP and shall
confirm the system is fully operational and optimized.

**B.   SAMPLING AT THE FACILITY**

16.   Defendant shall develop a monitoring program consistent with the
General Permit. During the Term, Defendant shall collect samples of storm water
discharge from each Discharge Point from all Qualifying Storm Events. Such
sampling shall take place as soon as possible within the four (4) hour period required
by the General Permit § XI.B.5.

17.    <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant intend to conduct sampling for any additional parameters that are listed in <u>40 C.F.R. § 131.38</u> and/or in the General Permit for any reason, including without limitation as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

18.    <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

19.    <u>Detection Limit</u>. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

20.    <u>Reporting</u>. Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within ten (10) days of receiving the laboratory report with the results.

C.    **REDUCTION OF POLLUTANTS IN DISCHARGES**

21.    <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels at or below those in Table 1.

**TABLE 1[3]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Copper | 0.0332 mg/L | NAL |
| Zinc | 0.26 mg/L | NAL |
| Aluminum | 0.75 mg/L | NAL |
| Iron | 1.0 mg/L | NAL |
| Lead | 0.262 mg/L | NAL |
| COD | 120 mg/L | NAL |
| TSS | 100 mg/L | NAL |
| pH | <6.5 or >8.5 SU | Basin Plan |
| O&G | 15 mg/L | NAL |

22.    Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any two (2) storm water samples from the Facility in a given Reporting Year exceeds the applicable numeric limit contained in Table 1[4]. An Exceedance shall constitute a violation of this Consent Decree.

23.    Action Plan. Action Plan. As of the Effective Date, and for the remainder of the Term, if (a) Defendant has an unauthorized non-storm water discharge in violation of Paragraph 12, or (b) after the advanced treatment system is fully installed, operational, and optimized, Defendant receives a laboratory report for storm water samples which demonstrates an Exceedance as defined above, or (c) after the advanced treatment system is fully installed, operational, and optimized, the advanced treatment system discharges untreated storm water in smaller than a Design Storm, (each, a "Trigger Event"), Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants at the Facility, and/or achieving compliance with the non-storm water discharge prohibition ("Action Plan"). The

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for zinc is either increased to 0.30 mg/L or decreased to 0.20 mg/L, such new NAL, and not 0.26 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

[4] In order to qualify as an Exceedance at least two exceedances of the numeric limit must be reported for a single pollutant (e.g., two of zinc is an Exceedance, but one each of copper and zinc, alone, is not).

[PROPOSED] CONSENT DECREE

complete Action Plan shall be submitted to LA Waterkeeper within forty-five (45) days of the applicable Trigger Event.

24. _Action Plan Requirements_. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge and/or the applicable discharge in smaller than a Design Storm; (2) an assessment of the source of each pollutant exceedance and/or applicable unauthorized non-storm water discharge and/or applicable discharge in smaller than a Design Storm; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition and/or Design Storm standard, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

a. _Action Plan Required BMPs._ The first Action Plan triggered as a result of an Exceedance after the advanced treatment system is fully installed, operational, and optimized shall include the development and implementation of the following BMPs:

i. _Patching/Paving_. Defendant shall patch, pave, or otherwise resurface areas of degraded pavement or asphalt throughout the Facility, including, but not limited to, the cracked curb directly upgradient from Discharge Point #1.

ii.   Strip Door Curtains. Defendant shall install strip door curtains to enclose the copper wire stripping machine to ensure that fugitive particles do not escape.

iii.  Filtration Socks.

1.   Defendant shall employ and secure new filtration socks (biochar or other equivalent media) to remove sediments, metals, and organic materials in storm water discharged from the Facility, and configure such socks to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations. Such filtration socks shall be deployed, at minimum, at the following locations prior to each Forecasted Rain Event until the storm water ceases flowing after the rain event has fully concluded: (1) at the end of the driveway just upstream of the advanced treatment system; (2) at the downstream end of the driveway that leads in from the west; and (3) downstream of the area where covered storage has been created for truck maintenance.

2.   Defendant shall, thereafter, employ and secure new socks in the same manner annually prior to the start of the Wet Season, no later than September 15th.

3.   Within twenty-four (24) hours prior to a Forecasted Rain Event, Defendant shall inspect all socks deployed at the Facility. During each Wet Season, as necessary, Defendant shall replace the socks when degraded or ineffective, including without limitation

when there are rips, tears or other visual damage, and/or sampling data demonstrating the socks are not sufficiently reducing pollutant concentrations.

    b.    <u>Action Plan Proposed BMPs for Evaluation.</u> Additionally, the following BMPs should generally be evaluated for inclusion in Action Plans, as applicable:

        i.    <u>Hydrologic Controls</u>. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

        ii.    <u>Sweeping</u>. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

        iii.    <u>Weighted Tarps</u>. Reconfiguring all exposed, stored industrial materials, including without limitation air conditioning units and steel beams, so that materials can be covered with weighted tarps sufficient to prevent exposure to rainfall.

        iv.    <u>Removing/Covering Materials</u>. Within twenty-four (24) hours prior to a Forecasted Rain Event, removing any exposed waste material and, moving any uncovered or un-tarped industrial materials into a covered structure adequate to prevent exposure to rainfall.

        v.    <u>Repairing Downspouts</u>. To the extent necessary for the purposes of controlling flow volume, repairing each of the Facility's downspouts and ensuring that they route downspout drainage away from industrial activities.

[PROPOSED] CONSENT DECREE

vi.   <u>Treatment Systems</u>. Installing additional components or systems, or otherwise improving, the advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

vii.   <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.   <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.   Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 28.b.i below.

e.    <u>Action Plan Payments</u>. Defendant shall pay Four Thousand
Dollars ($4,000.00) each time an Action Plan is submitted to LA
Waterkeeper. Payments are due at the same time that the
applicable Action Plan is submitted and shall be made to "Los
Angeles Waterkeeper" via certified mail, return receipt requested
to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd
Street, Suite 250, Los Angeles, CA 90012. Failure to submit a
payment as required under this Paragraph will constitute a breach
of the Consent Decree.

**D.    VISUAL OBSERVATIONS**

25.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately
trained staff of Defendant shall conduct visual observations during the Facility's
operating hours during every rain event. Such inspections shall comply with all
requirements of Section XI.A.2 of the General Permit.

26.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained
staff of Defendant shall conduct monthly non-storm water visual observations of the
Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the
General Permit. Such observations shall include outfalls, Discharge Points, outdoor
industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and
all other potential sources of industrial pollutants. All Discharge Points shall also be
inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens
upon any standing water, and other materials associated with operations at the
Facility. During the Wet Season, such inspections shall further include observations
of all storm water BMPs that are used only during the Wet Season at the Facility to
ensure that operational BMPs are being implemented, structural BMPs are in good
condition or working order, and that BMPs have been effective in producing clean
conditions at the Facility. Such inspections shall further include observation as to
whether there are any non-storm water discharges from the Facility.

27.   <u>Visual Observations Records</u>. Defendant shall maintain observation records, including photographs, pursuant to the requirements of the Industrial General Permit to document compliance with Paragraphs 24 and 25. Defendant shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

28.   <u>Employee Training Program</u>. Within thirty (30) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

        a.   <u>Materials</u>. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

        b.   <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

        c.   <u>Training Frequency</u>. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this

Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d.   Sampling Training. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.   Visual Observation Training. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.   Non-Storm Water Discharge Training. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.   Employees. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.   Records. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

29.   SWPPP Revisions.

a.   Initial SWPPP Revisions. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within forty-five (45) days of

the Effective Date for LA Waterkeeper's review and comment. The complete, updated SWPPP shall contain, at a minimum, the following elements:

i. A revised pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii. A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by Section X.G of the General Permit;

iii. Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv. A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows;

v. A MIP as required by Sections XI and X.I of the General Permit;

vi. A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

vii. A Training Program as described above in Paragraph 27.

b.  <u>Additional SWPPP Revisions</u>.

i.  Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii.  Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.  <u>Review of SWPPP</u>.  For any SWPPP updates pursuant to Paragraphs 28.a and 28.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of

22

the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**E.   COMPLIANCE MONITORING AND REPORTING**

30.   LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least twenty-four (24) hours' notice prior to a Site Inspection that is anticipated to occur during wet weather, and at least forty-eight (48) hours' notice prior to a Site Inspection that is anticipated to occur during dry weather. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 56. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

31.    Document Provision. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a.    Defendant shall forward LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are uploaded and certified on SMARTS within seven (7) business days of certification on SMARTS. Any additional documents, communications and/or correspondence that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality shall be copied to LA Waterkeeper by electronic mail and the individual(s) designated below in Paragraph 56.

b.    Within seven (7) business days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 56, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality not otherwise publicly accessible on SMARTS.

32.    Compliance Monitoring. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Three Thousand Dollars ($3,000.00) per year for two years.  The first such payment shall be made within thirty (30) days of the Entry Date, and a subsequent payment shall be made upon the applicable anniversary of the Effective Date. Payments pursuant to this Paragraph shall be made via check, made

payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

     **F.**    **ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

    33.   <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in waters tributary to San Pedro Bay, Defendant shall make a payment totaling Twenty Thousand Dollars ($20,000.00) to the Rose Foundation, paid in two equal ten-thousand dollar ($10,000) installments due within thirty (30) and ninety (90) days of the Entry Date. Payment shall be to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

    34.   <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of Forty-One Thousand Dollars ($41,000.00) to LA Waterkeeper to partially reimburse Plaintiff for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit and negotiating a resolution of this matter. The payment shall be made in two equal twenty-thousand five hundred dollar ($20,500) installments due within thirty (30) and ninety (90) days of the Entry Date made payable to: Coast Law Group, LLP and delivered by overnight carrier to Coast Law Group, LLP, Attn: Livia Borak Beaudin, 1140 South Coast Highway 101, Encinitas CA 92024. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

/././

[PROPOSED] CONSENT DECREE

35.    <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any document, report, or communication required by this Consent Decree, LA Waterkeeper shall provide written notice to Defendant of such missed deadline. If Defendant fails to cure such delinquency within five (5) business days of receipt of LA Waterkeeper's notice, then Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per week. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

36.    <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

## IV.    DISPUTE RESOLUTION

37.    <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in

writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

38.    <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 36, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

39.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, <u>33 U.S.C. § 1365(d)</u>, and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

40.    <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers, directors, and employees release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.    <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

43.     <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

44.     <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.     <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.     <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

[PROPOSED] CONSENT DECREE

47. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

48. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

51. <u>Diligence</u>. Defendant shall diligently file and pursue all required permits for any required BMPs and shall diligently procure contractors, labor, and materials as needed to complete all BMPs refenced herein by the required deadlines.

52. <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

53. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

54. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55.    <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

56.    <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

57.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| <u>If to Plaintiff</u>:<br>Los Angeles Waterkeeper<br>Benjamin Harris<br>Erina Kwon | <u>If to Defendant</u>:<br>Metal Recycling Services of<br>California, LLC<br>Christian Lux |
|---|---|

[PROPOSED] CONSENT DECREE

Madeleine Siegel
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: ben@lawaterkeeper.org
Email: erina@lawaterkeeper.org
Email: madeleine@lawaterkeeper.org
Phone: (310) 394-6162

With copies to:
Livia Borak Beaudin
Coast Law Group LLP
1140 South Coast Highway 101
Encinitas, CA 92024
Email: livia@coastlaw.com
natalie@coastlaw.com
Phone: 760-942-8505

PO BOX 2380
Gardena, CA 90248
mrscalllc@gmail.com

With copies to:
Michel & Associates, P.C.
W. Lee Smith
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Email: lsmith@michellawyers.com
Phone: 562-216-4447

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

58.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

1    IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

2    as of the date first set forth below.

3    APPROVED AS TO CONTENT

4

5

6    Dated: _____, 2025          By: _____

7                                              Bruce Reznik
                                             Executive Director
8                                             Los Angeles Waterkeeper

9

10

     Dated: _____, 2025          By: _____
11
                                             Christian Lux
12                                            Managing Member
                                             Metal Recycling Services of
13                                            California, LLC

14   APPROVED AS TO FORM

15

16                                         COAST LAW GROUP, LLP

17

18
     Dated: _____, 2025          By: _____
19
                                             Livia Borak Beaudin
20                                            Attorney for Plaintiff
                                             Los Angeles Waterkeeper
21

22                                         MICHEL & ASSOCIATES, P.C.

23

24

25   Dated: _____, 2025          By: _____

26                                           W. Lee Smith
                                             Attorney for Defendant
27                                            Metal Recycling Services of
                                             California, LLC
28

[PROPOSED] CONSENT DECREE

1    IN WITNESS WHEREOF, the undersigned have executed this Consent Decree
2  as of the date first set forth below.
3  APPROVED AS TO CONTENT
4
5
6  Dated: _____January 24_____, 2025      By: _____
7                                              Bruce Reznik
                                               Executive Director
8                                              Los Angeles Waterkeeper
9
10  Dated: _1_, _23_____, 2025            By: _____
11                                             Christian Lux
                                               Managing Member
12                                             Metal Recycling Services of
13                                             California, LLC
14
    APPROVED AS TO FORM
15
16                                          COAST LAW GROUP, LLP
17
18  Dated: _January 24_____, 2025         By: _____
19                                             Livia Borak Beaudin
                                               Attorney for Plaintiff
20                                             Los Angeles Waterkeeper
21
22                                          MICHEL & ASSOCIATES, P.C.
23
24
25  Dated: January 22, 2025               By: _____
26                                             W. Lee Smith
                                               Attorney for Defendant
27                                             Metal Recycling Services of
                                               California, LLC
28

                                   32
                        [PROPOSED] CONSENT DECREE

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: 04/07/25                    CENTRAL DISTRICT OF CALIFORNIA

_____
Honorable Hernan D. Vera
United States District Judge

[PROPOSED] CONSENT DECREE